**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA**

| | |
|---|---|
| MARVIN L. STARCHER, )<br>)<br>Petitioner, )<br>)<br>v. )<br>)<br>STANLEY KNIGHT, )<br>)<br>Respondent. ) | No. 1:08-cv-231-DFH-DML |

**Entry Discussing Petition for Writ of Habeas Corpus**

Marvin Starcher ("Starcher") seeks a writ of habeas corpus with respect to his 2003 convictions in an Indiana state court. Because the pleadings and the expanded record do not establish Starcher's entitlement to relief, his petition for a writ of habeas corpus must be denied and this action dismissed. This conclusion is based on the following facts and circumstances:

1.  Starcher was convicted of possession of methamphetamine in excess of three grams with intent to deliver and possession of a sawed off shotgun in the Elkhart Superior Court. His convictions were affirmed on appeal in *Starcher v. State,* No. 20A05-0402-CR-00106 (Ind.Ct.App. March 14, 2005)(*Starcher I*). His petition to transfer to the Indiana Supreme Court was denied. Starcher filed a pro se petition for post-conviction relief which was amended by counsel. The amended post-conviction petition alleged ineffective assistance of counsel. On January 17, 2007, the trial court denied Starcher's amended petition for post-conviction relief. Starcher appealed, raising two claims of attorney ineffectiveness. The Indiana Court of Appeals affirmed the denial of post-conviction relief in *Starcher v. State*, No. 20A04-703-PC-142 (Ind.Ct.App. August 9, 2007) (*Starcher II*).

2.  The facts and circumstances associated with the offenses, the prosecution and the convictions are the following:

On February 13, 2003, Officers James Snyder and Michael Carich of the Elkhart County Sheriff's Department initiated a traffic stop of a sport utility vehicle ("SUV") after observing that the driver made two turns without the use of a turn signal. Officer Snyder approached the SUV and noted that Starcher, the sole occupant, appeared nervous and agitated. Officer Snyder advised Starcher of the reason for the stop and requested license and registration.

When Starcher was unable to produce the requested documents, Officer Carich asked Starcher his name, social security number, and date of birth. Starcher seemed angry and evasive, and, while fidgeting, unzipped a pouch attached to the driver's side visor causing a small, glass, methamphetamine pipe to fall out. The officers observed a white powdery substance inside the pipe and asked Starcher to exit the vehicle.

With Starcher's consent, Officer Snyder performed a pat-down search for weapons. During the search, Officer Snyder felt a hard rock-like substance in Starcher's coat pocket, which Officer Snyder recognized as contraband. Upon closer inspection, the officers noted that the rock appeared to be methamphetamine located inside a small plastic baggie.

The officers handcuffed Starcher, advised him that he was under arrest, and placed him in the back of their squad car. After checking the Bureau of Motor Vehicles files, the officers learned that Starcher was driving with a suspended license and had a warrant out for his arrest. During a second search of Starcher's person made incident to his arrest, the officers found a nylon carrying case containing three more baggies of methamphetamine, a drug ledger, and $2,500 in cash that was separated into twenty-five bundles of one hundred dollars each. The baggies of methamphetamine were packaged in weights of approximately 3.4 grams, an amount commonly known as an "8-ball." *Amended Brief of the Appellant* at 5. The aggregate weight of the methamphetamine found on Starcher's person was 11.75 grams. *State's Exhibit* 29.

Based on the evidence discovered during the stop and arrest, the officers obtained a search warrant for Starcher's residence. In his bedroom, Officer Carich recovered two drug ledgers, a digital scale, and a large clear baggie containing several smaller baggies that were similar in size and shape to those found on Starcher's person but contained no residue. Nine guns were also recovered from the home, including a submachine gun, a sawed-off shotgun, and a gun that had been reported stolen.

The State charged Starcher with Count I, possession of more than three grams of methamphetamine with intent to deliver, Count II, possession of a sawed-off shotgun, and Count III, possession of a machine gun. Prior to trial, Starcher filed a motion to suppress the evidence obtained during the pat-down and subsequent searches on the basis that the stop was

pretextual. The trial court allowed opening statements and then held a hearing on the motion. Finding that the officers' version of what transpired was credible, the trial court denied Starcher's motion.

At trial, an officer with the drug task force testified that the amount of cash and the way it was bundled, the scales, the guns, the ledgers that contained the names associated with known methamphetamine dealers, and the way the methamphetamine was packaged all suggested that Starcher was trafficking in drugs. Starcher was found guilty of Counts I and II, but Count III was dismissed.

*Starcher I*, at pp. 2-4 (footnote omitted). In his direct appeal, Starcher presented the following challenges: 1) whether the trial court erred in denying a motion to suppress; 2) whether there was sufficient evidence to sustain the conviction of intent to deliver methamphetamine; and 3) whether the trial court erred in imposing Starcher's sentence. In his action for post-conviction relief, Starcher claimed that he received ineffective assistance of counsel at trial.

3. Starcher now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a). He may obtain such a writ if he establishes that he is in custody "in violation of the Constitution or laws . . . of the United States." *Id.;* see *Conner v. McBride,* 375 F.3d 643, 649 (7th Cir. 2004). The claims asserted here are the same as included in his direct appeal.

4. Review of Starcher's habeas action is governed by the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). *Lambert v. McBride,* 365 F.3d 557, 561 (7th Cir. 2004).

a. Under the AEDPA, a federal court may issue a writ of habeas corpus only if the state court reached a decision that was either contrary to, or an unreasonable application of, clearly established federal law as determined by the Supreme Court. *Julian v. Bartley,* 495 F.3d 487, 492 (7th Cir. 2007)(internal citations omitted). "In assessing the reasonableness of the state court's decision, the federal court assumes that the state courts' factual determinations are correct unless the defendant rebuts them with clear and convincing evidence." *Id.*

b. In *Williams v. Taylor*, 529 U.S. 362, 405 (2000)*,* the Supreme Court explained that a state court's decision is "contrary to" clearly established Supreme Court law "if the state court arrives at a conclusion opposite to that reached by this Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to ours." Under the "unreasonable application" prong of the AEDPA standard, a habeas petitioner must demonstrate that although the state court identified the correct legal rule, it unreasonably applied the controlling law to the facts of the case. *Id.* at 407.

      c.      To be considered "unreasonable," a state court's decision must lie "well outside the boundaries of permissible differences of opinion." *Goodman v. Bertrand,* 467 F.3d 1022, 1028 (7th Cir. 2006). "The habeas applicant has the burden of proof to show that the application of federal law was unreasonable." *Harding v. Sternes,* 380 F.3d 1034, 1043 (7th Cir. 2004)(citing *Woodford v. Visciotti,* 537 U.S. 19, 25 (2002)).

      d.      Starcher has not shown by clear and convincing evidence, nor by any evidence at all, that the factual findings of the Indiana Court of Appeals are not correct. The findings of that court are therefore accepted for the purpose of this proceeding, and no relief or re-determination of the facts is available to Starcher under § 2254(d)(2). See *Harding v. Walls,* 300 F.3d 824, 828 (7th Cir. 2002) (citing 28 U.S.C. § 2254(e)(1) and explaining that courts refer to (e)(1) for the petitioner's burden of proof when that petitioner tries to make a (d)(2) showing of unreasonable state court factual determinations).

      5.      In addition to the substantive standard noted above, "[o]ut of respect for finality, comity, and the orderly administration of justice, a federal court will not entertain a procedurally defaulted constitutional claim in a petition for habeas corpus absent a showing of cause and prejudice to excuse the default." *Dretke v. Haley,* 541 U.S. 386, 388 (2004). Stated otherwise, "[a] state prisoner . . . may obtain federal habeas review of his claim only if he has exhausted his state remedies and avoided procedurally defaulting his claim." *Thomas v. McCaughtry,* 201 F.3d 995, 999 (7th Cir. 2000). Thus,

> the claims raised by a petitioner in state court must be presented in a manner that fairly alerts the state court of the federal constitutional grounds for his claim. Fair presentment of a petitioner's claims to a state tribunal requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims by presenting both the operative facts and the controlling legal principles that he believes should govern the analysis.

*Badelle v. Correll,* 452 F.3d 648, 661 (7th Cir. 2006)(internal quotations and citations omitted). When procedural default has occurred, it can be overcome if a habeas petitioner "can demonstrate either (a) cause for the default and prejudice (*i.e.*, the errors worked to the petitioner's '*actual* and substantial disadvantage,'); or (b) that failure to consider his claim would result in a fundamental miscarriage of justice (*i.e.*, a claim of actual innocence)." *Conner,* 375 F.3d at 649 (internal citations omitted). "Cause" for a procedural default exists if the petitioner can demonstrate that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Prejudice is demonstrated by showing that the errors worked to the petitioner's "actual and substantial disadvantage." *United States v. Frady*, 456 U.S. 152, 170 (1982).

      6.      Starcher's first habeas claim is that his trial counsel was ineffective for failing to object to police officer testimony referring to the ledgers found at Starcher's home as "drug ledgers" and the officer's opinion testimony regarding the identity of individuals

named in the ledgers. The Sixth Amendment right to counsel exists "in order to protect the fundamental right to a fair trial." *Strickland v. Washington,* 466 U.S. 668, 684 (1984). The benchmark for judging any claim of ineffectiveness is "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id.* at 686.

> Under *Strickland,* a defendant alleging ineffective assistance of counsel must show that trial counsel's performance fell below "an objective standard of reasonableness," 466 U.S. at 688, and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. *Strickland[']s* first element requires proof that the petitioner's trial counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* at 687. Our review of the attorney's performance is "highly deferential" and reflects "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689 (internal quotation marks omitted). The second part of the *Strickland* inquiry requires a showing of prejudice, that is, proof that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. A "reasonable probability" of a different result is one sufficient to undermine confidence in the outcome." *Id.* at 694.

*Davis v. Lambert,* 388 F.3d 1052, 1059 (7th Cir. 2004). A failure to establish either prong would result in a denial of Starcher's claim. *See Rastafari v. Anderson,* 278 F.3d 673, 688 (7th Cir. 2001).

      7.    There was no portion of the decisions of the Indiana Court of Appeals in Starcher's case which "appl[ied] a rule that contradicts the governing law . . . [or made] a decision that involve[d] a set of facts materially indistinguishable from a Supreme Court case that arrives at a different result." *Williams,* 529 U.S. at 405-06. Accordingly, this court finds that: (1) the AEDPA does apply to the specification of deficient performance by Starcher's trial counsel; and (2) the "contrary to" prong of § 2254(d)(1), is not implicated by the circumstances of this case with respect to any of Starcher's claims.

      a.    The Indiana Court of Appeals did not reach a decision contrary to *Strickland*. Additionally, the decision it reached was not an unreasonable application of the *Strickland* standard. In reaching its decision, it reviewed and endorsed the findings of the post-conviction court. The Indiana Court of Appeals recognized the *Strickland* standard in evaluating Starcher's contention that he had been denied the effective assistance of counsel. *Starcher II*, at p.3. When the state courts have reached the merits of a claim, this court is confined to consideration of the result of that decision, not to the rationale or process whereby that decision is reached. *Early v. Packer,* 537 U.S. 3, 8 (2002); *Hough v. Anderson,* 272 F.3d 878, 897 n.7 (7th Cir. 2001).

  b. The Indiana Court of Appeals concluded that both Lieutenant Snyder and Officer Carich possessed specialized knowledge in the area of drug trafficking, and therefore, they were properly allowed to testify and their testimony did not state improper legal conclusions. *Starcher II,* at pp.5-6. "Starcher, therefore, cannot show that had a proper objection been made, the trial court 'would have had no choice but to sustain it.'" *Id.* at p.6 (citation omitted). The Indiana Court of Appeals concluded that Starcher's counsel at trial either made a strategic and reasonable decision (not below professional norms) or a decision which did not result in prejudice to Starcher in the manner required by *Strickland* to support a claim of ineffective assistance of counsel.

 8. Starcher's second claim is that his trial counsel was ineffective for failing to adequately investigate the source of money found on Starcher, for failing to object to admission of guns found at Starcher's home, for failing to point out that one of those guns was a replica, and for failing to object to evidence of prior convictions.

  a. Starcher has committed procedural default with respect to these ineffectiveness claims because he did not include them in *Starcher II*. See *O'Sullivan v. Boerckel,* 526 U.S. 838, 848 (1999)(holding that "a prisoner who fails to present his claims in a petition for discretionary review to a state court of last resort" has not properly exhausted the claims for purposes of 28 U.S.C. § 2254(b)(1), and that the habeas petitioner's failure to present her "claims to the Illinois Supreme Court in a timely fashion has resulted in a procedural default of those claims."); *Hough v. Anderson,* 272 F.3d 878, 892-93 (7th Cir. 2001) (petitioner's failure to present issue to Indiana Supreme Court constituted procedural default).

  b. Starcher has not shown either cause and prejudice for failing to include these claims in *Starcher II* or that the failure to reach the merits of these claims would result in a fundamental miscarriage of justice.

 9. Starcher's third claim is that the trial court erroneously denied his motion to suppress evidence based upon Starcher's claim of illegal search and seizure in violation of the Indiana Constitution. Starcher admitted on appeal that his argument would not support a Fourth Amendment claim and that it instead violated the Indiana Constitution. This claim is not cognizable because 28 U.S.C. § 2254(a) itself makes federal habeas relief contingent on a violation of "the Constitution or laws . . . of the United States." See *Rose vs. Hodges,* 423 U.S. 19, 21 (1975)("A necessary predicate for the granting of federal habeas relief [to a petitioner] is a determination by the federal court that [his or her] custody violates the Constitution, laws, or treaties of the United States."). This by necessity excludes alleged violations of state law from the scope of § 2254(a). See *Del Vecchio v. Illinois Dep't. of Corr.,* 31 F.3d 1363, 1370 (7th Cir. 1994)(habeas corpus jurisdiction is limited to evaluating alleged violations of federal statutory or constitutional law); *Bloyer v. Peters,* 5 F.3d 1093, 1098 (7th Cir. 1993)(citing *Estelle v. McGuire,* 112 S. Ct. 475, 480 (1991)).

10. Starcher's final claim is that there was insufficient evidence to support his conviction for felony possession of methamphetamine in excess of three grams with intent to deliver. Under the AEDPA, and drawing from the standard established by *Jackson v. Virginia,* 443 U.S. 307, 319 (1979), federal review of a challenge to the sufficiency of the evidence "turns on whether the state court provided fair process and engaged in reasoned, good-faith decision-making when applying *Jackson's* 'no rational trier of fact' test." *Gomez v. Acevedo,* 106 F.3d 192, 199 (7th Cir. 1997), *vacated on other grounds, Gomez v. DeTella,* 522 U.S. 801 (1997). The only appropriate inquiry under *Jackson*

> is whether, assuming the jury resolved all disputes in the state's favor and drew all inferences from that evidence, it would have been rational to convict. Not whether we would convict, but whether thoughtful people could convict.

*Branion v. Gramly,* 855 F.2d 1256, 1266 (7th Cir. 1988). The Indiana Court of Appeals first set out the pertinent parts of IND. CODE § 35-48-4-1, the statute under which Starcher was convicted of felony possession of methamphetamine in excess of three grams with intent to deliver. *Starcher I*, at p.9. It then reviewed the evidence and found it sufficient:

> Here, Starcher argued that he was only a methamphetamine user. Notwithstanding this argument, there was ample evidence to support Starcher's conviction for dealing in methamphetamine. Starcher possessed almost 12 grams of methamphetamine when he was arrested. The State's witness, Investigator William Wargo, testified at trial that a typical user only ingests one-half up to two-and-one-half grams per day for personal use. Investigator Wargo conceded that a heavy user could build up a tolerance for taking an "8-ball," i.e., 3.4 grams, but that taking an 8-ball daily would be physically difficult.
>
> Officer Carich and Lieutenant Barry Snyder of the Elkhart City Police Department both testified that, in their experience, the combination of the evidence of guns, scales, baggies, the quantity of drugs, the manner in which the drugs were packaged, and the amount of bundled cash caused them to conclude that Starcher possessed the methamphetamine with intent to deliver. Here, there was sufficient evidence to sustain a reasonable inference of Starcher's guilt.

*Id.* at p.10 (record citations omitted). The Indiana Court of Appeals' discussion of the evidence provided Starcher and the State of Indiana with fair process and constituted reasoned, good-faith decision-making when applying *Jackson's* "no rational trier of fact" test. This determination that the evidence was sufficient did not run afoul of the AEDPA standard as expressed in 28 U.S.C. § 2254(d)(1), and hence Starcher is not entitled to relief based on this claim.

11. This court has carefully reviewed the state record in light of Starcher's claims and has given such consideration to those claims as the limited scope of its review in a habeas corpus proceeding permits. "A defendant whose position depends on anything

other than a straightforward application of established rules cannot obtain a writ of habeas corpus." *Liegakos v. Cooke,* 106 F.3d 1381, 1388 (7th Cir. 1997). No such established rules entitle Starcher to relief in this case. Starcher's petition for a writ of habeas corpus is therefore **denied.** Judgment consistent with this Entry shall now issue.

      So ordered.

                                              DAVID F. HAMILTON, Chief Judge
                                              United States District Court

Date: _____